**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 11, 2020**

# In the Court of Appeals of Georgia

A20A1567. MELTON et al. v. McCARTHAN.

COLVIN, Judge.

When the trial court denied Deputy Richard Melton and Sergeant Khalid Wise's motion for summary judgment, they sought and we granted interlocutory review. On appeal, they argue that the trial court erred in finding that material issues of fact precluded summary judgment on the grounds of official immunity. For the reasons that follow, we affirm in part and reverse in part.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citation and punctuation omitted.) *Klingensmith v. Long County*, 352 Ga. App. 21, 21 (833 SE2d 608) (2019).

So viewed, the record shows that, in July 2011, Johnnie McCarthan was incarcerated in the Fulton County Jail. On July 27, 2011, during the 7:00 a.m. through 3:00 p.m. shift, McCarthan's newly assigned cellmate attacked him. The cellmate threw objects and feces throughout the cell; he pushed and attempted to hurt McCarthan. In response, McCarthan grabbed the cellmate and began to yell for help. Deputy Melton responded to the cell, grabbed and forced the cellmate to his knees, pushed him onto the ground, and handcuffed him . Deputy Melton then moved him out of the cell. Deputy Melton did not complete an incident report and testified that he had no recollection of any incident between McCarthan and his cellmate on July 27, 2011.

At the afternoon shift change, Deputy Melton left for the day and Sergeant Wise arrived to find the cellmate out of his assigned cell. Having no knowledge of the earlier altercation, Sergeant Wise ordered the cellmate back in his assigned cell. Soon after being placed in the cell, the cellmate violently attacked and injured McCarthan.

McCarthan filed suit against Deputy Melton and Sergeant Wise, alleging that their failure to perform their ministerial duties resulted in the injuries he sustained. Specifically, McCarthan alleged that Deputy Melton and Sergeant Wise failed to follow jail policies 1500-17 and 0300-18, which govern procedures for reporting

2

violent incidents and shift roll call meetings. The trial court denied Deputy Melton and Sergeant Wise's motion for summary judgment, and this interlocutory appeal followed.

The Georgia Constitution provides that "all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions. . . ." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). Public employees are not held liable for discretionary acts unless "they act with actual malice or with actual intent to cause injury in the performance of their official functions." Id.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009).

"Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." (Citation omitted.) *Grammens v. Dollar*, 287

3

Ga. 618, 620 (697 SE2d 775) (2010). In order for a written policy to impose a ministerial duty, it "must mandate simple, absolute, and definite action and require the execution of a specific task without any exercise of discretion." (Citation omitted.) Id. "When a policy requires a public official to exercise discretion in its implementation by determining if the necessary prerequisite condition to the ministerial act exists, the policy does not require the performance of a ministerial duty[.]" (Citation omitted.) *Hill v. Jackson*, 336 Ga. App. 679, 684 (1) (783 SE2d 719) (2016).

1. Deputy Melton argues that the trial court erred in finding he was not entitled to official immunity as a matter of law. Specifically, Deputy Melton contends that his duty to report incidents under Policy 1500-17 was discretionary, not ministerial. We disagree.

Policy 1500-17 states in relevant part,

(II) (1) Incidents which result in physical harm or threaten the safety of any person in the facility, or threaten the orderly control and security of the facility, will be documented in an Incident Report and submitted to appropriate supervisor no later than the conclusion of the tour of duty when any of the following occur: A. Discharge of a firearm or other weapon[;] B. Use of chemical agents to control inmates[:] C. *Use of*

4

*force to control inmates*[;] D. Inmates remaining in restraints at the end of the shift.

(II) (2) All incidents involving use of force that have the potential for injury should be recorded to establish the identities of the staff, inmates or others involved and to describe the nature of the incident. (Emphasis supplied).

While maintaining that he had no knowledge of the initial incident between McCarthan and the cellmate, Deputy Melton contends that his duty to create an incident report was not triggered because he had to use discretion to determine whether the incident threatened any person's safety or threatened the orderly control and security of the facility. Although the policy does not define what constitutes physical harm or an incident threatening a person's safety or the orderly control and security of the facility, McCarthan provided evidence that any fight, "nick on the face[,]" or "bump on the lip" required a report to be completed.

This evidence shows that Deputy Melton had no discretion to determine whether an event triggered the duty to create an incident report. See *Hill*, 336 Ga. App. at 685-686 (1) (i) (duty created by an internal policy was ministerial where there was no evidence that the employee had authority to deviate from the specified procedure). Along with the evidence that Deputy Melton used force to subdue the

5

cellmate after the initial incident, McCarthan has shown that the conditions requiring the creation of an incident report were met. Therefore, Deputy Melton had a ministerial duty to create a report of the initial incident prior to the end of his shift and was not entitled to official immunity as a matter of law. Given that Deputy Melton denied knowledge of the initial incident, the trial court did not err in determining that a dispute of material fact prevents summary judgment as to whether a ministerial duty was breached. See *Hill*, 336 Ga. App. at 686 (1) (i) (public employee was not entitled to official immunity where the record contained conflicting evidence of his knowledge of the condition which triggered the ministerial duty).

2. Sergeant Wise also argues that the trial court erred when it found that he was not entitled to official immunity as a matter of law because his duty to investigate under Policy 0300-18 was discretionary. We agree.

Although Sergeant Wise argues that Policy 0300-18 imposes a discretionary rather than a ministerial duty, we need not reach this issue. Policy 0300-18, which governs the roll call procedures at the start of each shift, provides that "[i]t is the responsibility of the oncoming watch commander/assistant watch commander to arrive for duty in sufficient time to review prior events and material(s) for Roll-Call Training and shall prioritize information chronologically for effective dissemination."

6

The policy further explains that "[a]t the start of Roll-Call, the shift watch commander or designee shall advise employees of . . . [n]oteworthy events or possible hazardous situations from prior shifts."

McCarthan argues that Policy 0300-18 imposes an affirmative duty to investigate events from the previous shift but has provided no evidence to support this reading of the policy. The undisputed evidence shows, however, that Sergeant Wise was a floor supervisor who had no knowledge of the initial incident because no incident report was filed before the end of the previous shift. Even assuming that Sergeant Wise was a watch commander or assistant watch commander, his lack of knowledge of the initial incident precludes a finding that he had a duty to inform himself or staff. Without knowledge that the initial incident occurred, Sergeant Wise could not advise employees of it. In the absence of any evidence that Sergeant Wise breached a ministerial duty, he is entitled to official immunity as a matter of law. See *Grammens*, supra, 287 Ga. at 620-621 (2010) (teacher was entitled to official immunity where a school policy did not impose a ministerial duty).

*Judgment affirmed in part and reversed in part. Reese, P. J., and Markle, J., concur.*